UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

DARRELL JAMES PARKS,                )
                                    )
         Petitioner,                )          Civil Action No. 08-403-GFVT
                                    )
vs.                                 )
                                    )
TROY WILLIAMSON, WARDEN, ET AL,     )          **MEMORANDUM OPINION**
                                    )              **AND ORDER**
         Respondents.               )

**** **** ****

On August 3, 2007, Petitioner Darrell James Parks ("Parks"), a prisoner then incarcerated at the United States Penitentiary-Lewisburg in Lewisburg, Pennsylvania ("USP-Lewisburg"), filed a *pro se* petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Middle District of Pennsylvania and paid the $5.00 filing fee. [R. 1, 7.] Following Parks's subsequent transfer to the United States Penitentiary-McCreary in Pine Knot, Kentucky ("USP-McCreary"), the Middle District of Pennsylvania transferred the petition to this Court pursuant to 28 U.S.C. § 1631. [R. 18.]

This matter is before the Court for screening. 28 U.S.C. § 2243; *Harper v. Thoms*, 2002 WL 31388736, *1 (6th Cir. 2002). As Parks is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in Parks's petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But if the Court determines that the petition fails to establish

adequate grounds for relief, it may dismiss the petition or make such disposition as law and justice require. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

## I.

In his petition, Parks indicates that while incarcerated in federal prison, he was charged and convicted in Disciplinary Action #1449171 of the Use of Any Narcotic Not Prescribed by Medical Staff.  As a result of that conviction, Parks was sanctioned with 60 days in disciplinary segregation, lost visitation privileges for 180 days to be followed by 180 days of family-only visits, and was recommended for a disciplinary transfer.  In addition to the sanctions actually imposed, Parks avers that because of the disciplinary conviction he "face[d] getting a longer rehearing/set-off date at his initial parole hearing, loss of educational good time and tainting of Petitioner's central files for 10 years, accompanied with, taking urines for two (2) years.  Most importantly, Petitioner could not and did not receive his 150 days educational earned good time." [R. 1 at pgs. 4-5.]

Parks alleges that he was prescribed the medication during a visit to an outside medical provider, and asserts that respondents failed to adhere to 28 C.F.R. § 550.30 *et seq*. by failing to determine if a justifiable reason existed for him to be using the drug in question, by failing to test the drug at an approved laboratory, by confirming the test results with a second test, by failing to advise him in writing within 24 hours after the charges against him were filed, by not ensuring that all medical records from the outside the facility were made part of the record before the disciplinary committee, and by failing to ensure that all witnesses with relevant knowledge were made available at the hearing.  Parks avers that these failures violated his rights to equal protection under the law and due process of law under the Fourteenth Amendment.  Documents

2

attached to his petition establish that Parks exhausted his claims through the Bureau of Prisons'
("BOP") inmate grievance process.  [R. 1.]

On January 4, 2008, the Middle District of Pennsylvania screened the petition by
Memorandum Opinion and Order.  [R. 12.]  The Court determined that relief should be denied
because the sanctions imposed did not include the loss of good conduct time or otherwise
implicate any liberty interest protected by the Due Process Clause under *Sandin v. Connor*, 515
U.S. 472, 484 (1995).  The Court noted that the record did not reflect that any of the collateral
effects mentioned in the Petition - such as delayed parole consideration or loss of educational
good time - had actually occurred. [R. 12 at pg. 6 n.1.]  Finally, the Court held that the
allegations in the petition were devoid of support for an Equal Protection Claim.

Parks promptly appealed the denial of his petition to the Third Circuit.  [R. 13.]  Although
the appellate proceedings before the Third Circuit are not part of the record before this Court, the
Court takes judicial notice of the proceedings pursuant to Federal Rule of Evidence 201.  *Parks
v. Williamson*, 08-1164, Court of Appeals for the Third Circuit.  On July 7, 2008, the Clerk of the
Court directed the parties to file responses into the record regarding (1) whether Parks (a D.C.
Code offender in federal custody) was required to request a certificate of appealability to pursue
the appeal; and (2) whether the case should be remanded to the district court to require the
Respondent to file an answer in light of Parks's allegation that he lost educational good time
credits available pursuant to D.C. Code Ann. § 24-428(a).

In its July 25, 2008, Response, the United States did not address the former question.
With respect to the alleged loss of educational good time, the United States noted that the award
of good time credits for D.C. Code offenders is governed by BOP Program Statement ("PS")

3

5884.02.  PS 5884.02 § 8 provides that once credits are earned, they are vested and cannot be forfeited.  PS 5884.02 § 9 sets forth a variety of eligibility criteria for earning credits, including a rule that an inmate may not earn educational credits for any month in which he violates prison rules.  Because in the United States' view, "Parks alleges that he lost 150 days of 'educational good time,'" the United States recommends remand to the district court because "there are not enough facts for the Government to determine if Parks was eligible to receive DCEGT or whether the disciplinary hearing affected Parks' ability to earn DCEGT..."

Accordingly, on September 11, 2008, the Third Circuit entered an Order granting Parks a certificate of appealability as required by *Coady v. Vaughn*, 251 F.3d 480, 486 (3rd Cir. 2001), and remanding the case to the district court for further proceedings.  Following remand, on December 16, 2008, the district court noted Parks's post-filing transfer from Pennsylvania to Kentucky, and transferred the petition to this Court, citing the "immediate custodian" rule of *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2006).

## II.

As this Court has previously held under similar facts,[1] the Middle District of Pennsylvania erred in transferring Parks's petition to this Court.  The only proper respondent to a petition for writ of habeas corpus is the petitioner's legal custodian.  *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004).  This is so because it is only the person with legal custody of the petitioner who has the power to grant the relief requested by the writ - release of the petitioner's person.  It is perhaps this latter fact which prompted the district court in Pennsylvania to transfer Parks's petition here, in light of his transfer to a federal prison within this district.

---

[1] *Yoder v. Williamson*, 07-121-HRW, Eastern District of Kentucky [R. 10].

However, the Supreme Court long ago established that the determination of the proper respondent is made at the time when the petition is filed, *Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968), and that the subsequent transfer of the petitioner at any time thereafter does not divest the court of jurisdiction or otherwise warrant transfer, *ex parte Mitsuye Endo*, 323 U.S. 283, 306 (1944).  The Supreme Court expressly validated the rule of *Endo* in *Rumsfeld*.  As the Court stated,

> *Endo* stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.

*Rumsfeld*, 542 U.S. at 440-41 (*citing Endo*, 323 U.S. at 307: "Th[e] objective [of habeas relief] may be in no way impaired or defeated by the removal of the prisoner from the territorial jurisdiction of the District Court. That end may be served and the decree of the court made effective if a respondent who has custody of the [petitioner] is within reach of the court's process."); *see also Stokes v. United States Parole Com'n*, 374 F.3d 1235, 1242 (D.C. Cir.) ("if Stokes had filed his petition in the United States District Court for the Northern District of Ohio, naming the Ohio warden as the respondent, then under *Endo* that court would have retained jurisdiction over his petition notwithstanding Stokes's later transfer to the federal penitentiary in South Carolina where he is now incarcerated."), *cert. denied*, 125 S.Ct. 448 (2004).  The Third Circuit adheres to this recognized rule.  *United States ex rel. Van Scoten v. Pennsylvania*, 404 F.2d 767 (3rd Cir. 1968) (federal district court lacks jurisdiction to issue habeas writ if person detained is not within its territorial jurisdiction *when petition for writ is filed*); *see also United States ex rel. Meadows v. New York*, 426 F.2d 1176 (2nd Cir. 1970) (transfer of petitioner after

5

filing does not deprive jurisdiction of court); *accord Ash v. Reilly*, 354 F. Supp. 2d 1 (D.D.C. 2004).

The disadvantages of any other approach should be clear.  Prisoners, whether in federal or state custody, may be transferred between prisons one or more times during the extended pendency of habeas proceedings, which may take years to complete.  Transferring a habeas proceeding to a new jurisdiction every time a prisoner is transferred to another prison would result in a case "hopscotching" between different courts one or more times before completion. The law does not require such an exhausting approach: the Supreme Court has made clear that the respondent need not be physically present within the court's jurisdiction; as long as a proper respondent can be reached by service of process, the court may entertain the petition.  *Rasul v. Bush*, 542 U.S. 466, 478-79 (2004) (*citing Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 495 (1973)); *see also Zalawadia v. Ashcroft*, 371 F.3d 292 (5th Cir. 2004) (removal of alien while his appeal of the district court's dismissal of his habeas petition was pending did not deprive the district court of jurisdiction on remand after the Supreme Court vacated the Court of Appeals' dismissal of the appeal and the Court of Appeals vacated the district court's dismissal of the petition and remanded to the district court).  Nonetheless, in the interests of judicial economy, the Court will address Parks's petition, as it must be denied on the merits.

The United States' July 25, 2008, brief before the Third Circuit stated that "Parks alleges that he lost 150 days of 'educational good time,'" and that PS 5884.02 § 8 provided Parks with a vested, nonforfeitable interest in those credits.  The United States accordingly argued remand to the district court was necessary to determine whether Parks was eligible to earn educational good time credits and, if so, whether the DHO sanction affected that ability.  Regrettably, the United

6

States' position appears to have been based upon an incomplete understanding of Parks's factual

allegations, the substance of the applicable regulations, and the controlling law.

In his petition, Parks alleged that as a result of the DHO conviction he:

> is to face getting a longer rehearing/set-off date at his initial parole hearing, loss of educational good time and tainting of Petitioner's central files for 10 years, accompanied with, taking urines for two (2) years.  Most importantly, Petitioner could not and did not receive his 150 days educational earned good time.

Petition [R. 1 at pgs. 4-5.]  The nature of his allegation is made more clear when Parks alleges

later in the petition that his DHO conviction:

> greatly prejudice Petitioner because, Petitioner was running on a time line so that he could receive his 150 days educational earn time which can only be taken off-of the front of his sentence, for parole.

Petition [R. 1] at pg. 5.  Parks's statements can reasonably be construed to mean one of several

things: that because of the DHO conviction (1) he did not receive educational good time; (2) he

lost educational good time after it was earned; or (3) he was unable to earn 150 hours of good

time before a parole hearing.  Because the second contention is not possible under the applicable

statute and regulations, and the first and third contentions are factually probable but legally

irrelevant to a Due Process claim, Parks's petition must be denied.[2]

---

[2]  Although not necessary to the Court's holding, it is open to question whether educational good time credits earned by Parks may even be applied to reduce the minimum term of his sentence.  D.C. Stat. § 24-221.06 provides that "Institutional and educational good time credits shall not be applied to the minimum terms of persons sentenced under § 22-4502, § 48-901.02, § 48-904.01, § 22-2104(b), § 22-2803, or § 22-4504(b)."  This rule is implemented by PS 5884.02 § 9(b).  The referenced sections criminalize and enhance penalties for, *inter alia*, possession of a dangerous weapon during the commission of a crime of violence and carrying an unlicensed firearm.  Parks is serving a term of life imprisonment for assaulting a police officer with a deadly weapon, possession of a firearm during crime of violence, carrying a pistol without a license, and willful failure to appear in court, all under predecessor versions of the above-referenced statutes.  *Parks v. United States*, 627 A.2d 1, 2-3 (D.C.App. 1993).

The applicable D.C. statute provides that:

(a) Every person whose conduct complies with institutional rules and who demonstrates a desire for self-improvement by successfully completing an academic or vocational program, including special education and Graduate Equivalency Diploma programs, shall earn educational good time credits of no less than 3 days a month and not more than 5 days a month. These credits shall not be awarded until completion of the academic or vocational program.

(b) Educational good time credits authorized by the provisions of this section shall be applied to the person's minimum term of imprisonment to determine the date of eligibility for release on parole and to the person's maximum term of imprisonment to determine the date when release on parole becomes mandatory.

D.C. St. 24-221.01 (formerly D.C. Code 24-429).

The BOP implements this statute through PS 5884.02.  Section 8 provides that an inmate enrolled in an approved program will earn exactly five days of educational good time credit for each month of participation in one or more BOP educational programs.  Section 8(e) states that "[o]nce appropriately awarded, [educational good time] vests, **and cannot be forfeited**" (emphasis added).  PS 5884.02 § 9(a) provides that an inmate becomes ineligible to earn educational good time for any month in which he violates prison rules as found during a DHO proceeding.  Subsection 1 clarifies that:

(1) Ineligibility for DCEGT because of a prison rule violation **is not a sanction the Discipline Hearing Officer (DHO) imposes.** Rather, D.C. Code § 24-429 mandates compliance with institution rules as a pre-condition to eligibility for DCEGT.

PS 5884.02 § 9(a)(1) (emphasis added).  Finally, Subsection 10 provides that inmates become ineligible for educational good time when they voluntarily withdraw from the program or are involuntarily withdrawn, such as by virtue of a transfer or placement in administrative or

8

disciplinary segregation.  Such inmates resume eligibility upon their re-enrollment in the

program.  PS 5884.02 § 10(a)-(c).

The foregoing regulations make clear that an inmate does not and cannot forfeit

educational good time credits once they are awarded, PS 5884.02 § 8(e), and that a DHO lacks

the authority to cause an inmate to forfeit such credits.[3]  Rather, if a DHO proceeding results in a

finding that an inmate violated a prison rule, the inmate becomes **ineligible** to **earn** educational

good time credits for that month.  Further, if the DHO sanctions the inmate with placement in

segregation which prevents the inmate from participating in the educational programs, the inmate

is involuntarily withdrawn from the program until they are able to return.  Here, Parks was found

guilty of an infraction and was placed in segregation for two months.  As a result, at most Parks

became **ineligible** to receive five days of educational good time credits for each of the months in

which he committed the infraction and when he was placed in segregation.  PS 5884.02 §§ 9(a),

10(a).  Parks regained his eligibility to earn educational good time credits upon his release from

segregation.  PS 5884.02 § 10(b).  So viewed, at most Parks suffered a delay in his accrual of

educational good time credits,  a consequence which does not implicate any liberty or property

interest protected by the Due Process Clause.  *Griffin v. Mahoney*, 2007 WL 1742828, **1 (9th

Cir. 2007) (inmate's delayed participation in sex offender treatment program does not constitute

atypical and significant hardship required to establish liberty interest under *Sandin v. Conner*,

515 U.S. 472, 484 (1995)).  Nor would any delay resulting therefrom for his consideration for

parole implicate Due Process concerns.  *Michael v. Ghee*, 498 F.3d 372, 378 (6th Cir. 2007)

---

[3] This approach to educational good time credits stands in stark contrast to
ordinary good conduct time ("GCT"), which is expressly given "subject to disciplinary
forfeiture or disallowance."  PS 5884.03(7)(f).

("This Court has never held that an inmate's eligibility for parole at a certain time, under a discretionary parole system, is an "atypical and significant hardship."  Swihart's eligibility or non-eligibility for parole does not affect the manner in which he is confined and, thus, no liberty interest is implicated."); *Mancill v. Quarterman*, 2007 WL 2088368, **1 (S.D.Tex. 2007) (delay in parole consideration caused by prison disciplinary finding fails to state a due process claim where inmate lacks liberty interest in receiving parole) (*citing Allison v. Kyle*, 66 F.3d 71, 73-74 (5th Cir. 1995)); *Allen v. Dretke*, 2005 WL 1155067 (S.D. Tex. 2005) ("The law also forecloses any complaint that the reduction in his good time earning class status has delayed Allen's release on parole, creating a due process violation").  Accordingly, Parks's petition fails to state a claim for denial of his due process rights, and is denied.

### III.

The Court being sufficiently advised, it is **ORDERED** as follows:

1.      Darrell James Parks's petition for a writ of habeas corpus [R. 1] is **DENIED.**

This the 6th day of February, 2009.



Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**

10